Joe R. ROMERO, father and next of friend of Eleanor Flora Romero, et al.,
Appellants,

v.

Guy WEAKLEY, Superintendent of El Centro School District and Central Union High School District, et al., Appellees.

R. J. BURLEIGH, father and next of friend of Jontille Burleigh, et al.,
Appellants,

v.

Guy WEAKLEY, Superintendent of El Centro School District and Central Union High School District, et al., Appellees.

No. 14807.

United States Court of Appeals
Ninth Circuit.

Oct. 10, 1955.

Wirin, Rissman & Okrand, Los Angeles, Cal., Ralph C. Estrada, Tucson, Ariz., Richard W. Petherbridge, El Centro, Cal., Byron F. Lindsley, San Diego, Cal., for appellants.

Arthur L. Lockie, Dist. Atty., County of Imperial, El Centro, Cal., Franklin D. McDaniel, Rigmor C. Barker, Deputys Dist. Atty., El Centro, for appellees.

Before DENMAN, Chief Judge, and ORR and CHAMBERS, Circuit Judges.

DENMAN, Chief Judge.

The above appeals are from a decision of the district court, 131 F.Supp. 818, refusing to consider complaints in class actions brought, with one exception, in behalf of persons of Mexican or the Negro race. The exception is the complaint of Charles W. Ervin, a white person, claiming his white child was segregated from a school wrongly limited to Negro and Mexican descended children, and compelled to attend a more distant school of white children.

All allege a segregation in public school facilities on the basis of race or color and seek relief under 8 U.S.C.A. § 43 (now 42 U.S.C.A. § 1983), commonly known as the Civil Rights Act, 28 U.S.C. § 1343(3) and the Fourteenth Amendment, which all the parties agree give the Federal District Court jurisdiction to entertain the action.

All the parties also are agreed that the decisions to refuse to consider the complaints are appealable. Apart from the agreement we hold these are appealable decisions.[1]

All the parties further agree that no issue of law exists in California as to the violation of the Constitution in segregating children in the public schools on the basis of race or foreign descent, the laws of California prohibiting it, being in agreement with that of the United States, as held in Brown v. Board of Education of Topeka, 349 U.S. 294, 75 S.Ct. 753, 755, succeeding its prior decision in 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873, that such segregation is unconstitutional and "All provisions of federal, state, or local law requiring or permitting such discrimination must yield to this principle."

One of the obvious purposes of the creation of right to litigate these civil rights in a federal court is to enable a member of a minority group claiming race or color discrimination to choose either a court presided over by a federal judge appointed by the President of the United States or a state court, presided over by an elected judge.

Here it is the Superior Court of Imperial County elected by the majority of its voters[2] where in this equitable case the facts involved may be submitted to a jury of such voters to find and advise upon the issue of the discrimina-

---

1. Alternatively, appellants sought a writ of mandamus. Our remanding order is, in effect, such a writ.

2. Calif.Constitution, Art. 6, § 6.

tion[3] alleged to have been committed by school boards elected by the voters of the county's several school districts and by the elected County Board of Supervisors in the fixing of the boundaries of the school district. The appellants well could have concluded that there was a greater assurance of a just consideration of their complaints in the District Court of the United States than in the Superior Court of Imperial County. As stated in Willcox v. Consolidated Gas Co. of New York, 212 U.S. 19, 29 S.Ct. 192, 195, 53 L.Ed. 382:

> "When a Federal court is properly appealed to in a case over which it has by law jurisdiction, it is its duty to take such jurisdiction * * *. The right of a party plaintiff to choose a Federal court where there is a choice cannot be properly denied."

In refusing to consider the appellants' complaints, the district court considers the case from a viewpoint exactly contrary to this obvious purpose of the civil rights legislation to give the litigant his choice of a federal forum rather than that of the state. That court's refusal is based on the contention that the elected Imperial County judge and its likely advisory jury of voters electing the judge and the school boards elected by the voters of the county's several school districts and the elected County Board in fixing the school districts boundaries, will more justly treat the Negro and Mexican descended people than will a federal judge holding a life position without likelihood that his decision may affect the voters at a reelection. This appears from the following extraordinary statement of the District Judge's opinion that its consideration of the complaints "would be in effect to remove the conduct of schools from locally elected representatives, removable by the local citizens if unsatisfactory, and put that conduct into the hands of the different Judges in each federal judicial district, who are ap-pointed for life by an appointing power not responsive to the will of the local citizens of the school district, and would thus, as surely as a Constitutional amendment, destroy the local powers of the States and of their citizens in the regulation and conduct of their schools, which is one of the remaining important powers of the various States, as sovereign units in the 'indestructible union of indestructible states.' " [131 F.Supp. 832.]

Since the parties agree that the only issues involved in the case are whether the alleged facts admittedly violating the Federal and State Constitutions are true, we have for decision a federal constitutional question purely of fact. The District Court clearly erred in refusing to consider the complaints on the following ground:

> "Only when, and if, a Federal constitutional question becomes inevitable of decision should a Federal Court exercise its jurisdiction. That is not the present posture of this case."

The District Court relies on the Supreme Court's decision in the case of Railway Commission of Texas v. Pullman Co., 1941, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971. That was a civil rights case in which the action of the United States District Court was stayed to allow the Pullman Co. and other complainants to litigate in the courts of Texas through to its Supreme Court, the authority of the Texas Ry. Commission to discriminate in the employment of Negro porters on the Pullman cars. If the Texas Supreme Court decided that the Commission had such authority, the constitutional question would then be before the federal court. If the Supreme Court of Texas decided that no such power existed in its Railway Commission the opinion, 312 U.S. at page 498, 61 S.Ct. at page 644 holds that such a "definitive ruling on the state issue would terminate the controversy."

3. Cal.Code Civ.Proc. § 592.

In the instant case there was no disputed question of state law at all. Unlike the Pullman case, where there was an agreement on the discriminatory facts, here such alleged facts in the complaints are denied in the answers. The Pullman Co. case gives no support to the District Court's refusal to litigate the cases before it.

Nor is the District Court action supported by Alabama Public Service Commission v. Southern Ry. Co., 1951, 341 U.S. 341, 71 S.Ct. 762, 95 L.Ed. 1002. That was not a case involving constitutional civil rights. It concerned, 341 U.S. at pages 347–348, 71 S.Ct. 762, exceedingly complicated facts as to costs of railway operation, requiring the balancing by expert railway accountants of the loss to the railroad from the continued operation of certain trains against the public need for their service. That function is one for which the public service commission is specially created. No such expert knowledge and experience are here required to determine whether the segregation of school children exists. The Federal District Court is as well equipped to consider the evidence on this question as is the Superior Court of the County.[4]

The apposite case is the recent decision of the Supreme Court in Brown v. Board of Education of Topeka, 1955, 349 U.S. 294, 75 S.Ct. 753, in which, incidentally, is answered the District Court's statement that its decree for a permanent injunction and possible subsequent contempt proceedings for its future violations would be "setting this Court up as a continuous and perpetual supervisor of the multitude of duties of the defendant local School Boards and other officials."

In the Brown case the Supreme Court ordered the District Court to do as much as the District Court here. The opinion in the Brown case, 349 U.S. at pages 299, 301, 75 S.Ct. at page 756, states:

"Full implementation of these constitutional principles may require solution of varied local school problems. School authorities have the primary responsibility for elucidating, assessing, and solving these problems; courts will have to consider whether the action of school authorities constitutes good faith implementation of the governing constitutional principles. * * *

* * * * *

" * * * To that end, the courts may consider problems related to administration, arising from the physical condition of the school plant, the school transportation system, personnel, *revision of school districts and attendance areas into compact units* to achieve a system of determining admission to the public schools on a nonracial basis, and *revision of local laws and regulations which may be necessary in solving the foregoing* problems." [Emphasis added.]

The District Court comments that the complaints lack sufficient clarity as to facts constituting segregation. Since it is agreed that the District Court has jurisdiction of the complaints, this is a matter for consideration under a motion to cure the insufficiency, if any.

The District Court's decision is reversed and the case is remanded to that court and it is ordered to entertain and dispose of its issues.

CHAMBERS, Circuit Judge.

I concur only in the result.

4. "The submission of special issues is a useful device in judicial administration in such circumstances as existed in the * * * Pullman cases, * * * but in the absence of special circumstances * * * it is not to be used to impede the normal course of action where federal courts have been granted jurisdiction of the controversy." Propper v. Clark, 1949, 337 U.S. 472, 492, 69 S.Ct. 1333, 1344, 93 L.Ed. 1480. [Emphasis added.]