HENDERSON *v.* UNITED STATES ET AL.

No. 25. Argued April 3, 1950.—Decided June 5, 1950.

*Belford V. Lawson, Jr.* and *Jawn Sandifer* argued the cause for appellant. With them on the brief were *Marjorie M. McKenzie, Sidney A. Jones, Jr., Earl B. Dickerson, Josiah F. Henry, Jr., Theodore M. Berry* and *George H. Windsor.*

*Attorney General McGrath* and *Solicitor General Perlman* argued the cause for the United States, appellee, urging reversal. With *Mr. Perlman* on the brief were *Assistant Attorney General Bergson, Charles H. Weston* and *Philip Elman.*

*Allen Crenshaw* argued the cause for the Interstate Commerce Commission, appellee, urging affirmance. With him on the brief was *Daniel W. Knowlton.*

*Charles Clark* argued the cause for the Southern Railway Co., appellee. With him on the brief were *Sidney S. Alderman* and *Arthur J. Dixon.*

By special leave of Court, *The Honorable Sam Hobbs,* a member of the Committee on the Judiciary of the House of Representatives, argued the cause and filed a brief, as *amicus curiae,* urging affirmance.

Briefs of *amici curiae,* supporting appellant, were filed by *Robert J. Silberstein, Mozart G. Ratner* and *Ruth Weyand* for the National Lawyers Guild; *Phineas Indritz* for the American Veterans Committee, Inc.; *Arthur J. Goldberg* for the Congress of Industrial Organizations; *Will Maslow, Shad Polier* and *Joseph B. Robison* for the American Jewish Congress; *Robert L. Carter* and

*Thurgood Marshall* for the National Association for the Advancement of Colored People; and *Joseph R. Booker, Richard E. Westbrooks, Lucia T. Thomas, William A. Booker, Georgia Jones Ellis, Earl B. Dickerson* and *Joseph E. Clayton, Jr.* for the Civil Rights Committee of the National Bar Association.

MR. JUSTICE BURTON delivered the opinion of the Court.

The question here is whether the rules and practices of the Southern Railway Company, which divide each dining car so as to allot ten tables exclusively to white passengers and one table exclusively to Negro passengers, and which call for a curtain or partition between that table and the others, violate § 3 (1) of the Interstate Commerce Act. That section makes it unlawful for a railroad in interstate commerce "to subject any particular person, . . . to any undue or unreasonable prejudice or disadvantage in any respect whatsoever: . . . ." 54 Stat. 902, 49 U. S. C. § 3 (1). We hold that those rules and practices do violate the Act.

This issue grows out of an incident which occurred May 17, 1942. On that date the appellant, Elmer W. Henderson, a Negro passenger, was traveling on a first-class ticket on the Southern Railway from Washington, D. C., to Atlanta, Georgia, en route to Birmingham, Alabama, in the course of his duties as an employee of the United States. The train left Washington at 2 p. m. At about 5:30 p. m., while the train was in Virginia,[1] the first call to dinner was announced and he went promptly to the dining car. In accordance with the practice then in effect, the two end tables nearest the kitchen were conditionally reserved for Negroes. At each meal those tables were to be reserved initially for Negroes and, when oc-

---

[1] No reliance is placed in this case upon any action by any state.

cupied by Negroes, curtains were to be drawn between them and the rest of the car. If the other tables were occupied before any Negro passengers presented themselves at the diner then those two tables also were to be available for white passengers, and Negroes were not to be seated at them while in use by white passengers.[2] When the appellant reached the diner, the end tables in question were partly occupied by white passengers but at least one seat at them was unoccupied. The dining-car steward declined to seat the appellant in the dining car but offered to serve him, without additional charge, at

---

[2] Rule of the Southern Railway Company issued July 3, 1941, and in effect May 17, 1942:

"DINING CAR REGULATIONS

"Meals should be served to passengers of different races at separate times. If passengers of one race desire meals while passengers of a different race are being served in the dining car, such meals will be served in the room or seat occupied by the passenger without extra charge. If the dining car is equipped with curtains so that it can be divided into separate compartments, meals may be served to passengers of different races at the same time in the compartments set aside for them." 258 I. C. C. 413, 415, 63 F. Supp. 906, 910.

Joint Circular of the Southern Railway System issued August 6, 1942:

"Effective at once please be governed by the following with respect to the race separation curtains in dining cars:

"Before starting each meal pull the curtains to service position and place a 'Reserved' card on each of the two tables behind the curtains.

"These tables are not to be used by white passengers until all other seats in the car have been taken. Then if no colored passengers present themselves for meals, the curtain should be pushed back, cards removed and white passengers served at those tables.

"After the tables are occupied by white passengers, then should colored passengers present themselves they should be advised that they will be served just as soon as those compartments are vacated.

" 'Reserved' cards are being supplied you." 258 I. C. C. at p. 415, 63 F. Supp. at p. 910.

his Pullman seat. The appellant declined that offer and the steward agreed to send him word when space was available. No word was sent and the appellant was not served, although he twice returned to the diner before it was detached at 9 p. m.

In October, 1942, the appellant filed a complaint with the Interstate Commerce Commission alleging especially that the foregoing conduct violated § 3 (1) of the Interstate Commerce Act.[3] Division 2 of the Commission found that he had been subjected to undue and unreasonable prejudice and disadvantage, but that the occurrence was a casual incident brought about by the bad judgment of an employee. The Commission declined to enter an order as to future practices. 258 I. C. C. 413. A three-judge United States District Court for the District of Maryland, however, held that the railroad's general practice, as evidenced by its instructions of August 6, 1942, was in violation of § 3 (1). Ac-

---

[3] "(1) *It shall be unlawful for any common carrier* subject to the provisions of this part *to make, give, or cause any undue or unreasonable preference or advantage to any particular person,* company, firm, corporation, association, locality, port, port district, gateway, transit point, region, district, territory, or any particular description of traffic, *in any respect whatsoever; or to subject any particular person,* company, firm, corporation, association, locality, port, port district, gateway, transit point, region, district, territory, or any particular description of traffic *to any undue or unreasonable prejudice or disadvantage in any respect whatsoever: . . . ."* (Emphasis supplied.) 54 Stat. 902, 49 U. S. C. § 3 (1).

The appellant sought an order directing the railroad not only to cease and desist from the specific violations alleged but also to establish in the future, for the complainant and other Negro interstate passengers, equal and just dining-car facilities and such other service and facilities as the Commission might consider reasonable and just, and requiring the railroad to discontinue using curtains around tables reserved for Negroes.

The appellant sought damages, but the Commission found no pecuniary damages and that issue has not been pressed further.

cordingly, on February 18, 1946, it remanded the case for further proceedings. 63 F. Supp. 906. Effective March 1, 1946, the company announced its modified rules which are now in effect. They provide for the reservation of ten tables, of four seats each, exclusively and unconditionally for white passengers and one table, of four seats, exclusively and unconditionally for Negro passengers. Between this table and the others a curtain is drawn during each meal.[4]

---

[4] "TRANSPORTATION DEPARTMENT CIRCULAR NO. 142. CANCELLING INSTRUCTIONS ON THIS SUBJECT DATED JULY 3, 1941, AND AUGUST 6, 1942.

"SUBJECT: SEGREGATION OF WHITE AND COLORED PASSENGERS IN DINING CARS.

"To: Passenger Conductors and Dining Car Stewards.

"Consistent with experience in respect to the ratio between the number of white and colored passengers who ordinarily apply for service in available diner space, equal but separate accommodations shall be provided for white and colored passengers by partitioning diners and the allotment of space, in accordance with the rules, as follows:

"(1) That one of the two tables at Station No. 1 located to the left side of the aisle facing the buffet, seating four persons, shall be reserved exclusively for colored passengers, and the other tables in the diner shall be reserved exclusively for white passengers.

"(2) Before starting each meal, draw the partition curtain separating the table in Station No. 1, described above, from the table on that side of the aisle in Station No. 2, the curtain to remain so drawn for the duration of the meal.

"(3) A 'Reserved' card shall be kept in place on the left-hand table in Station No. 1, described above, at all times during the meal except when such table is occupied as provided in these rules.

"(4) These rules become effective March 1, 1946.

"R. K. McClain,
"Assistant Vice-President."

269 I. C. C. 73, 75, 80 F. Supp. 32, 35.

Counsel for the railway company, at a subsequent hearing, corrected the above rules "to the extent of using the word 'negroes' in the place of 'colored persons.' " Also, the evidence shows, and the Commission

On remand, the full Commission, with two members dissenting and one not participating, found that the modified rules do not violate the Interstate Commerce Act and that no order for the future was necessary.[5]   269 I. C. C. 73.   The appellant promptly instituted the present proceeding before the District Court, constituted of the same three members as before, seeking to have the Commission's order set aside and a cease and desist order issued.   28 U. S. C. §§ 41 (28), 43–48; 49 U. S. C. § 17 (9); see also, 28 U. S. C. (Supp. III) §§ 1336, 1398, 2284, 2321, 2325.   With one member dissenting, the court sustained the modified rules on the ground that the accommodations are adequate to serve the average number of Negro passengers and are "proportionately fair."   80 F. Supp. 32, 39.   The case is here on direct appeal.   28 U. S. C. (Supp. III) §§ 1253, 2101 (b).   In this Court, the

has stated, that "White and Negro soldiers are served together, without distinction."   258 I. C. C. 413, 415, 63 F. Supp. 906, 910.   The rules, accordingly, are treated as applicable only to civilian passengers. The company further showed that it is now substituting a five-foot high wooden partition in place of the curtain.   The steward's office is being placed in the table space opposite that reserved for Negro passengers and a similar wooden partition is being erected between that office and the rest of the car.

[5] The company was permitted to introduce two tabulations, covering about ten days each, showing the comparative numbers of meals served to white and Negro passengers on trips comparable to the one which the appellant had taken.   These show that only about 4% of the total meals served were served to Negro passengers whereas four reserved seats exceed 9% of a total seating capacity of 44.   On the other hand, the tabulations also show that at one meal 17 Negro passengers, and at each of 20 meals more than eight Negro passengers, were served.   Similarly, the brief filed by the Commission states that, out of the 639 serving periods reported, on 15 occasions more than four times as many white passengers were served as there were seats reserved for them, and, on 541 occasions, there were two or more rounds of servings.

United States filed a brief and argued orally in support of the appellant.

It is clear that appellant has standing to bring these proceedings. He is an aggrieved party, free to travel again on the Southern Railway. Having been subjected to practices of the railroad which the Commission and the court below found to violate the Interstate Commerce Act, he may challenge the railroad's current regulations on the ground that they permit the recurrence of comparable violations. *Mitchell* v. *United States,* 313 U. S. 80, 92–93.

The material language in § 3 (1) of the Interstate Commerce Act has been in that statute since its adoption in 1887. 24 Stat. 380. From the beginning, the Interstate Commerce Commission has recognized the application of that language to discriminations between white and Negro passengers. *Councill* v. *Western & Atlantic R. Co.,* 1 I. C. C. 339; [6] *Heard* v. *Georgia R. Co.,* 1 I. C. C. 428; *Heard* v. *Georgia R. Co.,* 3 I. C. C. 111; *Edwards* v. *Nashville, C. & St. L. R. Co.,* 12 I. C. C. 247; *Cozart* v. *Southern R. Co.,* 16 I. C. C. 226; *Gaines* v. *Seaboard Air Line R. Co.,* 16 I. C. C. 471; *Crosby* v. *St. Louis-San Francisco R. Co.,* 112 I. C. C. 239. That section recently was so applied in *Mitchell* v. *United States, supra.*

The decision of this case is largely controlled by that in the *Mitchell* case. There a Negro passenger holding a first-class ticket was denied a Pullman seat, although such a seat was unoccupied and would have been avail-

---

[6] "The Western and Atlantic Railroad Company will be notified to cease and desist from subjecting colored persons to undue and unreasonable prejudice and disadvantage in violation of section 3 of the Act to regulate commerce, and from furnishing to colored persons purchasing first-class tickets on its road accommodations which are not equally safe and comfortable with those furnished other first-class passengers." 1 I. C. C. at p. 347.

able to him if he had been white. The railroad rules had allotted a limited amount of Pullman space, consisting of compartments and drawing rooms, to Negro passengers and, because that space was occupied, the complainant was excluded from the Pullman car and required to ride in a second-class coach. This Court held that the passenger thereby had been subjected to an unreasonable disadvantage in violation of § 3 (1).[7]

The similarity between that case and this is inescapable. The appellant here was denied a seat in the dining car although at least one seat was vacant and would have been available to him, under the existing rules, if he had been white.[8] The issue before us, as in the *Mitchell* case, is whether the railroad's current rules and practices cause passengers to be subjected to undue or unreasonable prejudice or disadvantage in violation of § 3 (1). We find that they do.

The right to be free from unreasonable discriminations belongs, under § 3 (1), to each particular person. Where a dining car is available to passengers holding tickets entitling them to use it, each such passenger is equally entitled to its facilities in accordance with reasonable regulations. The denial of dining service to any such passenger by the rules before us subjects him to a prohibited disadvantage. Under the rules, only four Negro passengers may be served at one time and then only at the table reserved for Negroes. Other Negroes who present themselves are compelled to await a vacancy at that table, although there may be many vacancies elsewhere

---

[7] The rules also denied access by Negroes to the dining car and observation car. The principles there announced applied equally to those facilities.

[8] That specific denial of service was condemned by the Commission and the District Court as a violation of § 3 (1). Review of that condemnation is not sought here.

in the diner. The railroad thus refuses to extend to those passengers the use of its existing and unoccupied facilities. The rules impose a like deprivation upon white passengers whenever more than 40 of them seek to be served at the same time and the table reserved for Negroes is vacant.

We need not multiply instances in which these rules sanction unreasonable discriminations. The curtains, partitions and signs emphasize the artificiality of a difference in treatment which serves only to call attention to a racial classification of passengers holding identical tickets and using the same public dining facility. Cf. *McLaurin* v. *Oklahoma State Regents, ante,* p. 637, decided today. They violate § 3 (1).

Our attention has been directed to nothing which removes these racial allocations from the statutory condemnation of "undue or unreasonable prejudice or disadvantage . . . ." It is argued that the limited demand for dining-car facilities by Negro passengers justifies the regulations. But it is no answer to the particular passenger who is denied service at an unoccupied place in a dining car that, on the average, persons like him are served. As was pointed out in *Mitchell* v. *United States,* 313 U. S. 80, 97, "the comparative volume of traffic cannot justify the denial of a fundamental right of equality of treatment, a right specifically safeguarded by the provisions of the Interstate Commerce Act." Cf. *McCabe* v. *Atchison, T. & S. F. R. Co.,* 235 U. S. 151; *Missouri ex rel. Gaines* v. *Canada,* 305 U. S. 337.

That the regulations may impose on white passengers, in proportion to their numbers, disadvantages similar to those imposed on Negro passengers is not an answer to the requirements of § 3 (1). Discriminations that operate to the disadvantage of two groups are not the less to be condemned because their impact is broader

than if only one were affected. Cf. *Shelley* v. *Kraemer,* 334 U. S. 1, 22.

Since § 3 (1) of the Interstate Commerce Act invalidates the rules and practices before us, we do not reach the constitutional or other issues suggested.

The judgment of the District Court is reversed and the cause is remanded to that court with directions to set aside the order of the Interstate Commerce Commission which dismissed the original complaint and to remand the case to that Commission for further proceedings in conformity with this opinion.

*It is so ordered.*

MR. JUSTICE DOUGLAS concurs in the result.

MR. JUSTICE CLARK took no part in the consideration or decision of this case.