Robert M. DAWSON, Jr., et al.,
Appellants,

v.

MAYOR AND CITY COUNCIL OF BAL-
TIMORE CITY, James C. Anderson,
President, et al., Appellees.

Milton LONESOME et al., Appellants,

v.

R. Brooke MAXWELL, Chairman, Ber-
nard I. Gonder, H. Lee Hoffman, Sr., J.
Miles Lankford, J. Wilson Lord, consti-
tuting the Commissioners of Forests
and Parks of Maryland, et al., Appellees.

Nos. 6903, 6904.

United States Court of Appeals,
Fourth Circuit.

Argued Jan. 11, 1955.

Decided March 14, 1955.

Robert L. Carter, New York City (Lin-
wood Koger, Jr., Tucker R. Dearing, Bal-
timore, Md., Jack Greenberg and Thur-
good Marshall, New York City, on the
brief), for appellants.

Francis X. Gallagher, Asst. City Sol.,
Baltimore, Md., and W. Giles Parker,
Asst. Atty. Gen., of Maryland (Thomas
N. Biddison, City Sol., Edwin Harlan,
Deputy City Sol., Hugo Ricciuti, Asst.
City Sol., Baltimore, Md., and C. Ferdi-
nand Sybert, Atty. Gen., of Maryland, on
the brief), for appellees.

Before PARKER, Chief Judge, and
SOPER and DOBIE, Circuit Judges.

PER CURIAM.

These appeals were taken from orders
of the District Court dismissing actions
brought by Negro citizens to obtain de-
claratory judgments and injunctive relief
against the enforcement of racial segre-
gation in the enjoyment of public beaches
and bathhouses maintained by the public
authorities of the State of Maryland and
the City of Baltimore at or near that city.
Notwithstanding prior decisions of the
Supreme Court of the United States
striking down the practice of segrega-
tion of the races in certain fields, the Dis-
trict Judge, as shown by his opinion, 123
F.Supp. 193, did not feel free to disre-
gard the decision of the Court of Ap-
peals of Maryland in Durkee v. Murphy,
181 Md. 259, 29 A.2d 253, and the de-
cision of this court in Boyer v. Garrett, 4
Cir., 183 F.2d 582. Both of these cases
are directly in point since they related
to the field of public recreation and held,
on the authority of Plessy v. Ferguson,
163 U.S. 537, 16 S.Ct. 1138, 41 L.Ed. 256,
that segregation of the races in athletic
activities in public parks or playgrounds
did not violate the 14th Amendment if
substantially equal facilities and services
were furnished both races.

Our view is that the authority of these
cases was swept away by the subsequent
decisions of the Supreme Court. In Mc-
Laurin v. Oklahoma State Regents, 339
U.S. 637, 70 S.Ct. 851, 94 L.Ed. 1149, the

Supreme Court had held that it was a denial of the equal protection guaranteed by the Fourteenth Amendment for a state to segregate on the ground of race a student who had been admitted to an institution of higher learning. In Henderson v. United States, 339 U.S. 816, 70 S.Ct. 843, 94 L.Ed. 1302, segregation on the ground of race in railway dining cars had been held to be an unreasonable regulation violative of the provisions of the Interstate Commerce Act, 49 U.S.C.A. § 1 et seq. Subsequently, in Brown v. Board of Education of Topeka, 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873, segregation of white and colored children in the public schools of the state was held to be a denial of the equal protection clause of the 14th Amendment; and in Bolling v. Sharpe, 347 U.S. 497, 74 S.Ct. 693, 98 L.Ed. 884, segregation in the public schools of the District of Columbia was held to be violative of the due process clause of the Fifth Amendment. In these cases, the "separate but equal" doctrine adopted in Plessy v. Ferguson [163 U.S. 537, 16 S.Ct. 1144] was held to have no place in modern public education.

The combined effect of these decisions of the Supreme Court is to destroy the basis of the decision of the Court of Appeals of Maryland in Durkee v. Murphy, and the decision of this court in Boyer v. Garrett. The Court of Appeals of Maryland based its decision in Durkee v. Murphy on the theory that the segregation of the races in the public parks of Baltimore was within the power of the Board of Park Commissioners of the City to make rules for the preservation of order within the parks; and it was said that the separation of the races was normal treatment in Maryland and that the regulation before the court was justified as an effort on the part of the authorities to avoid any conflict which might arise from racial antipathies.

 It is now obvious, however, that segregation cannot be justified as a means to preserve the public peace merely because the tangible facilities furnished to one race are equal to those furnished

to the other. The Supreme Court expressed the opinion in Brown v. Board of Education of Topeka, 347 U.S. 492 to 494, 74 S.Ct. 690 to 691, that it must consider public education in the light of its full development and its present place in American life, and therefore could not turn the clock back to 1896 when Plessy v. Ferguson was written, or base its decision on the tangible factors only of a given situation, but must also take into account the psychological factors recognized at this time, including the feeling of inferiority generated in the hearts and minds of Negro children, when separated solely because of their race from those of similar age and qualification. With this in mind, it is obvious that racial segregation in recreational activities can no longer be sustained as a proper exercise of the police power of the State; for if that power cannot be invoked to sustain racial segregation in the schools, where attendance is compulsory and racial friction may be apprehended from the enforced commingling of the races, it cannot be sustained with respect to public beach and bathhouse facilities, the use of which is entirely optional.

The decision in Bolling v. Sharpe also throws strong light on the question before us for it admonishes us that in approaching the solution of problems of this kind we should keep in mind the ideal of equality before the law which characterizes our institutions. The court said, 347 U.S. at pages 499–500, 74 S.Ct. at page 694:

"Classifications based solely upon race must be scrutinized with particular care, since they are contrary to our traditions and hence constitutionally suspect. As long ago as 1896, this Court declared the principle 'that the constitution of the United States, in its present form, forbids, so far as civil and political rights are concerned, discrimination by the general government, or by the states, against any citizen because of his race.' And in Buchanan v. Warley, 245 U.S. 60, 38 S.Ct.

16, 62 L.Ed. 149, the Court held that a statute which limited the right of a property owner to convey his property to a person of another race was, as an unreasonable discrimination, a denial of due process of law.

"Although the Court has not assumed to define 'liberty' with any great precision, that term is not confined to mere freedom from bodily restraint. Liberty under law extends to the full range of conduct which the individual is free to pursue, and it cannot be restricted except for a proper governmental objective. Segregation in public education is not reasonably related to any proper governmental objective, and thus it imposes on Negro children of the District of Columbia a burden that constitutes an arbitrary deprivation of their liberty in violation of the Due Process Clause."

Reversed.