Jesse H. TURNER, on behalf of himself and others similarly situated, Plaintiff,

v.

Wassel RANDOLPH et al., constituting the Board of Directors of the Memphis Public Library of the City of Memphis, Tennessee, Defendants.

Civ. A. No. 3525.

United States District Court W. D. Tennessee, W. D.

July 22, 1961.

H. T. Lockard, A. W. Willis, Jr., R. B. Sugarmon, Jr., Memphis, Tenn., Thurgood Marshall and Constance B. Motley, New York City, for plaintiff.

Edward P. Russell, of Canada, Russell & Turner, Larry B. Creson, of Laughlin, Watson & Creson, John S. Montedonico, and Walter Chandler, Memphis, Tenn., for defendants.

WILLIAM E. MILLER, Chief Judge.

This action was brought by plaintiff, a Negro resident of Memphis and Shelby County, Tennessee, to desegregate the public libraries of that city and county. As shown by order entered on January 4, 1961, the Mayor and Commissioners of the City of Memphis on October 13, 1960, after the action was instituted, publicly announced that in the future all public library units and facilities in the City of Memphis and Shelby County under the jurisdiction, management and control of the defendants, would be available to all qualified persons without discrimination on account of race and color. Because of such voluntary action on the part of the city, the order of January 4, 1961 directed that in the future all library units in the city and county shall be maintained and operated by the defendants without discrimination against qualified applicants solely on account of race and color. However, the question whether the defendants should be required to desegregate restrooms and toilet and lavatory facilities was expressly reserved, the defendants having insisted that a separation of these facilities was required in all buildings under a city ordinance by which they were bound, and that they accordingly should not be required to abolish the separation, or to remove the signs indicating such separate facilities for the races in the public libraries. The defendants had previously filed a motion to be permitted to amend their answer to plead the city ordinance as a defense, the motion specifically stating that the defendants had decided to stand on the ordinance and to submit the question of its constitutionality "to the Court for consideration in the light of existing conditions to be developed by the evidence presented to the Court." Such motion was allowed by the order of January 4, 1961, but the issue as to

the constitutionality of the ordinance was reserved until a further hearing. Such hearing was held on May 3, 1961.

The ordinance is a part of the Memphis Building Code and its pertinent provisions are as follows:

"(d) Separate facilities required for white and black races and for both sexes.—Where buildings are used by both white and the black races, separate facilities shall be provided for each race, and separate facilities shall be provided for both sexes of each race, where both men and women use any such building.

"(e) Proper signs to be affixed.— Proper signs shall be affixed on water closets indicating those provided for each race and for each of the sexes, in all buildings or places where such separate facilities are required." Sec. 3044.29, Vol. II, Memphis Municipal Code.

When the Mayor and Commissioners of the City of Memphis announced a discontinuance of the policy of segregation in all "library units and facilities" in the City of Memphis and Shelby County, no specific mention was made of restrooms, lavatories or toilet facilities. Nor was any specific mention made of any other facilities. Since the facilities now in question are essential in the proper operation of the library units themselves, it is difficult to follow the argument that they were not in fact voluntarily desegregated by the city itself in announcing without qualification a discontinuance of its former policy of segregation.

However, as the defendants were proceeding on a voluntary basis in desegregating the public libraries, all doubts in this respect were resolved in their favor and they were permitted to plead as an additional defense the provisions of the ordinance quoted above, with the result that the only question now before the Court is whether the ordinance itself may be constitutionally applied to the library units and facilities under the jurisdiction and control of the defendants

in the City of Memphis and in Shelby County.

Whether the ordinance in other situations or as applied to other types of buildings meets the constitutional test need not be decided. It is sufficient to dispose of the present case to determine whether it may be constitutionally applied to the particular buildings and facilities here involved.

The "separate but equal" doctrine which formerly met with judicial approval in sustaining racial distinctions in connection with a great variety of publicly owned, maintained or operated facilities, has been generally swept away: in education, Brown v. Board of Education, 1954, 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873; in theatres, Muir v. Louisville Park Theatrical Ass'n, 6 Cir., 1953, 202 F.2d 275, vacated 347 U.S. 971, 74 S.Ct. 783, 98 L.Ed. 1112; in housing, Banks v. Housing Authority of City & County of San Francisco, 1953, 120 Cal.App.2d 1, 260 P.2d 668, certiorari denied 347 U.S. 974, 74 S.Ct. 784, 98 L.Ed. 1114; in parks, Dawson v. Mayor & City Council of Baltimore City, 4 Cir., 1955, 220 F.2d 386, affirmed 350 U.S. 877, 76 S.Ct. 133, 100 L.Ed. 774; Department of Conservation & Development, etc. v. Tate, 4 Cir., 1956, 231 F.2d 615; on golf courses, City of Greensboro v. Simkins, 4 Cir., 1957, 246 F.2d 425; Holmes v. City of Atlanta, 1955, 350 U.S. 879, 76 S.Ct. 141, 100 L. Ed. 776, vacating 5 Cir., 1955, 223 F.2d 93; in swimming pools, City of St. Petersburg v. Alsup, 5 Cir., 1956, 238 F.2d 830; in restaurants, Derrington v. Plummer, 5 Cir., 1956, 240 F.2d 922; and in many other areas.

In McLaurin v. Oklahoma State Regents, 339 U.S. 637, 70 S.Ct. 851, 94 L.Ed. 1149, it was ruled that a state may not after having admitted a Negro student to graduate instruction in its state university afford him different treatment from other students solely because of his race. In that case it appeared that the plaintiff was assigned to a seat in the classroom in a row specified for colored students; he was assigned to a separate table in the library on the same floor and also to a special table in the cafeteria. These separations, imposed by the state in order to comply with a state statute, were held to violate the plaintiff's constitutional rights under the equal protection clause of the Fourteenth Amendment.

Under the impact of McLaurin and the other cases cited, the conclusion appears inescapable that the separations here complained of may not be maintained in library units and buildings under the jurisdiction and control of the defendants in the City of Memphis and Shelby County, and that the city ordinance relied upon by the defendants, as applied to such buildings and facilities, is in contravention of the equal protection clause of the Fourteenth Amendment.

Dawley v. City of Norfolk, 159 F. Supp. 642, 647, relied on by the defendants, in which the District Court dismissed an action by a Negro attorney to require the city to remove signs denoting separate toilets for Negroes in a state courthouse, and in which certiorari was denied by the Supreme Court, 359 U.S. 935, 79 S.Ct. 650, 3 L.Ed.2d 636, is inapposite. While some of the reasoning of the opinion is not altogether clear, the case is distinguishable upon the ground that the defendants named in the action did not have control over the courthouse and facilities, such control under Virginia statutes being vested exclusively in the state court judges who were not made parties. The Court in its opinion made the unqualified statement that "[t]he action herein must be dismissed for the reason that the defendants do not have control of the courthouse."

In an apparent effort to support the ordinance as a reasonable and valid exercise of the police power, the defendants introduced proof at the hearing showing that the incidence of venereal disease is much higher among Negroes in Memphis and Shelby County than among mem-

bers of the white race. The supplemental answer pleading the ordinance as an additional defense avers "that said ordinances are constitutional as a proper exercise of the police power of the city and that the public welfare requires the enforcement of said ordinances for reasons of health, sanitation and related factors to avoid the spread of contagious diseases. * * * ". One difficulty with this argument insofar as the present case is concerned, however the ordinance may be viewed with respect to other situations or other types of buildings, is that there is no showing that the application of the ordinance to buildings of the type now under consideration is necessary to protect the public health or to prevent the spread of contagious diseases. In fact, in the absence of proof, one would be led to believe that venereal disease would not be expected to occur to any appreciable extent among that segment of the population, whether white or Negro, using the facilities and services afforded by the public libraries of the city. Another weakness in the defendants' position is that the Court would not be justified on the basis of the evidence presented to make a finding that venereal disease is communicated or contracted in the use of toilet facilities. It is true that the Secretary of the Venereal Disease Division of the County Health Department testified that it may be possible for venereal disease to be contracted in this manner, but she did not qualify as an expert in this respect and did not support her conclusion by relevant facts or statistics. The same witness testified that venereal disease is ordinarily communicated by physical contact between persons, and no scientific or reliable data have been offered to demonstrate that the joint use of toilet facilities by the races in the libraries in Memphis and Shelby County would constitute a serious danger to the public health, safety or welfare.

An order will be submitted to the Court in accordance with this memorandum.