Willie Carl **SINGLETON**, a minor by Neva Singleton, his mother and next friend, et al., Appellants,

v.

**BOARD OF COMMISSIONERS OF STATE INSTITUTIONS et al.,** Appellees.

No. 21889.

United States Court of Appeals Fifth Circuit.

Feb. 15, 1966.

Leroy D. Clark, New York City, Earl M. Johnson, Jacksonville, Fla., Jack Greenberg, Constance Baker Motley, New York City, for appellants.

Gerald Mager, Asst. Atty. Gen., James W. Kynes, Atty. Gen., Tallahassee, Fla., for appellees.

Before TUTTLE, Chief Judge, and PHILLIPS,* and WISDOM, Circuit Judges.

WISDOM, Circuit Judge:

In this class action the plaintiffs seek to desegregate the Florida state reform schools. The plaintiffs-appellants, four Negro juveniles now sixteen to eighteen years old, were inmates of the reform schools when they brought this suit, but were released during its pendency in the district court. They allege that the State of Florida, through its Board of Commissioners of State Institutions, operates reform schools, particularly the Florida State School for Boys and the Florida School for Girls, on a racially segregated basis. The plaintiffs sue on behalf of all Negro juveniles committed or subject to commitment to the schools under the Board's jurisdiction.

■ Twelve years ago, in Brown v. Board of Education of Topeka, 1954, 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873, the Supreme Court effectively foreclosed the question of whether a State may maintain racially segregated schools. The principle extends to all institutions controlled or operated by the State. "[I]t is no longer open to question that a State may not constitutionally require segregation of public facilities." Johnson v. Virginia, 1963, 373 U.S. 61, 62, 83 S.Ct. 1053, 1054, 10 L.Ed.2d 195.

This appeal is from an order of the district court dismissing the complaint for lack of standing in the plaintiffs. The district court found it "explicit on the record" that the plaintiffs had been "fully and completely released from the terms and conditions of their original commitment", and were no longer in the "custody, real or constructive, of the Board of Commissioners of State Institutions, or any other named defendants". But in our view of the facts of this case and the law of Florida, these plaintiffs are still under the probationary jurisdiction of both the Board and the juvenile court. We reverse the judgment of the district court.

I.

In July 1963 the plaintiffs were arrested and charged with trespass for sitting-in at a segregated restaurant in St. Augustine, Florida. July 23, 1963, Judge Charles C. Mathis of the Juvenile Court of St. Johns County, Florida, adjudged

* Of the Tenth Circuit, sitting by designation.

the plaintiffs delinquents, but offered to release them on probation on condition that they stop demonstrating. The plaintiffs and their parents refused. The four delinquents were sent to the Florida reform schools.

December 12, 1963, having been unsuccessful on appeal through the state courts, the plaintiffs' parents agreed to accept Judge Mathis's probationary conditions. At this point Judge Mathis withdrew his offer. The plaintiffs' parents then petitioned the Board of Commissioners of State Institutions for release. January 14, 1964, the Board granted the petition on condition that the plaintiffs accept the probationary terms offered and withdrawn by Judge Mathis.

Meanwhile, November 12, 1963, the plaintiffs brought this suit seeking to enjoin segregation in the Schools, and to have section 955.12 of the Florida Statutes, F.S.A., requiring racial segregation of incarcerated male juveniles, declared unconstitutional as violative of the fourteenth amendment. The complaint alleges that white and Negro inmates of the Schools are separated; that certain courses and recreational facilities available to whites are denied to Negroes; and that the assignment of staff members at the schools is based on race.

February 14, 1964, the Board moved to dismiss the complaint on the ground of mootness. The motion was denied, but the district court gave the Board time to produce proof that the plaintiffs were no longer under the Board's jurisdiction. The Board offered a letter from Judge Mathis saying that he had not put the plaintiffs under any probationary conditions, and had not been notified of the conditions under which the plaintiffs had been released. The district court rescinded its order denying the Board's motion, and entered an order dismissing the complaint.

## II.

■■ The Board puts a good deal of misplaced reliance on decisions having to do with the doctrine of mootness, perhaps because of the superficial resemblance that this case bears to certain criminal and habeas corpus cases mooted after the defendant or petitioner had served his time or been released from custody.[1] The problem in this case is not one of *mootness,* but one of *standing.* The concepts are related but distinct components of the notion of justiciability, derived from the Constitution's grant of power to the federal courts to decide "Cases" and "Controversies". Art. III, § 2. A case is moot when there is "no longer a subject matter on which the judgment of this Court [can] operate". St. Pierre v. United States, 1943, 319 U.S. 41, 42, 63 S.Ct. 910, 911, 87 L.Ed. 1199. Obviously that description does not fit here; assuming that the Florida State Schools for Boys and Girls are in fact segregated (and we need hardly read between the lines of this record to do so), we could render an effective decree, responsive to the complaint. Only permanent—demonstrably permanent—desegregation of the Schools would render this case moot. See Buckner v. School Board, 4 Cir. 1964, 332 F.2d 452; Note, 78 Harv.L.Rev. 1667 (1965).

■■ The issue, then, is whether the named plaintiffs are members of the class they purport to represent. The general standing requirement in cases involving governmental segregation is that the plaintiffs must show past use of the facilities, where feasible, and a right to, or a reasonable possibility of future use.[2]

1. Parker v. Ellis, 1960, 362 U.S. 574, 80 S.Ct. 909, 4 L.Ed.2d 963; United States ex rel. Innes v. Crystal, 1943, 319 U.S. 755, 63 S.Ct. 1164, 87 L.Ed. 1708; Zimmerman v. Walker, 1943, 319 U.S. 744, 63 S. Ct. 1027, 87 L.Ed. 1700; St. Pierre v. United States, 1943, 319 U.S. 41, 63 S.Ct. 910, 87 L.Ed. 1199; Tornello v. Hudspeth, 1943, 318 U.S. 792, 63 S.Ct. 990, 87 L.Ed. 1158; Weber v. Squier, 1942, 315 U.S. 810, 62 S.Ct. 800, 86 L.Ed. 1209.

2. See Bailey v. Patterson, 1962, 369 U.S. 31, 33, 82 S.Ct. 549, 7 L.Ed.2d 512; Evers v. Dwyer, 1958, 358 U.S. 202, 204, 79 S.Ct. 178, 3 L.Ed.2d 222; Henderson v. United States, 1950, 339 U.S. 816, 823, 70 S.Ct. 843, 94 L.Ed. 1302; Mitchell v.

The Board argues that since no probationary terms were imposed by the juvenile court, the plaintiffs are not on probation, and therefore do not satisfy the future-use requirement. The Board's asserted position is irreconcilable with the record and with the Florida statutes. The Board's minutes for January 14, 1964, contain the following entry regarding the plaintiffs:

> On August 27, 1963, the parents of said juveniles declined to accept custody under certain conditions set by the Court. However, at a hearing on December 12, 1963, the parents acquiesced in the conditions for probation previously set by the Court. Without objection, the Board authorized release of said minors into the custody of their parents under the terms and conditions set by the Court.[3]

January 16, 1964, the Board sent letters informing each plaintiff's parents of the decision to authorize release. Each letter stated that release was conditioned on the parents' agreement to "accept the terms of probation originally set forth by the Judge of St. Johns County Juvenile Court". Each letter bears the notation that a copy was sent to Judge Mathis.

These minutes and letters admit no other interpretation than that the plaintiffs' release from the Florida schools was subject to probationary conditions imposed, in effect, by the Board, if not by the juvenile court. The Board has power to enforce those conditions by recommitment to the Schools for breach of probation, or for any other reason it may choose. F.S.A. § 955.23. Furthermore, even if the Board had released the plaintiffs with no probationary terms, the plaintiffs, as a matter of Florida law, would still be subject to the jurisdiction of the juvenile court. Section 39.02 (5) of the Florida Statutes, F.S.A. provides that once the juvenile court has got jurisdiction over a child, that jurisdiction continues until the child becomes twenty-one.

We conclude, therefore, that the plaintiffs are subject to the probationary jurisdiction of both the Board, which imposed the conditions of release, and the juvenile court, which has jurisdiction as a matter of law. The plaintiffs' probationary status brings them well within the future-use requirement for standing.[4] Cf. Anderson v. City of Albany, supra.

The judgment of the district court is reversed, and the case is remanded for action consistent with this opinion.

---

United States, 1941, 313 U.S. 80, 93, 61 S.Ct. 873, 85 L.Ed. 1201; Anderson v. City of Albany, 5 Cir. 1963, 321 F.2d 649, 652–3; Rackley v. Board of Trustees of Orangeburg Regional Hospital, 4 Cir. 1962, 310 F.2d 141; Morrison v. Davis, 5 Cir. 1958, 252 F.2d 102, 103.

3. The Board argues, jejunely:

Appellants were free to remain in the institutions so long as they deemed it expedient; instead, Appellants chose to voluntarily seek their own release, and should not now be heard to aver that Appellees' sympathetic act is an attempt to "thwart a decision" of the Court.

4. Because we have concluded that the plaintiffs' probationary status gives them standing, we do not reach the question whether plaintiffs Samuel Louis White and Willie Carl Singleton, who are sixteen and seventeen years old respectively, and therefore still subject to commitment to the Schools for future offenses (F.S.A. §§ 39.01(6), 955.18), would satisfy any so-called "future-use" requirement by virtue of that fact alone. Nor do we have to decide whether the fact that Samuel Louis White, Audrey Nell Edwards, and Jo Ann Anderson are now facing trial for participation in other sit-in demonstrations gives them standing regardless of their probationary status. We note, however, that the nature of the public facility involved in this case demands liberal interpretation of future-use requirements. The plaintiffs point out the practical difficulty of ever getting a decision on the merits if present incarceration is a prerequisite, since at none of the Florida Schools is the average sojourn of an inmate as long as the one year (and more) that often elapses between the filing of a complaint and the issuance of an order in the average desegregation suit.