# OVERBROOK FARMERS UNION COOP-ERATIVE ASSOCIATION, Plaintiff–Appellee and Cross–Appellant,

v.

# MISSOURI PACIFIC RAILROAD COMPANY, Defendant–Appellant and Cross–Appellee.

Nos. 92–3138, 92–3165.

United States Court of Appeals, Tenth Circuit.

March 31, 1994.

---

1. We suggest that the district court consider appointing J. Frank McCabe to represent Stanley

upon remand.

Stephen C. Herman (Thomas F. McFarland, Jr. with him on the brief), of Belnap,

Spencer, McFarland & Herman, Chicago, IL, for plaintiff-appellee and cross-appellant.

Arvid E. Roach, II (Thomas H. Odom and John Jenab with him on the brief), of Covington & Burling, Washington, DC (Joseph D. Anthofer, Union Pacific R. Co., Omaha, NE, Michael B. Buser, of Shook, Hardy & Bacon, Overland Park, KS, with him on the brief), for defendant-appellant and cross-appellee.

Before TACHA, GOODWIN * and BRORBY, Circuit Judges.

GOODWIN, Circuit Judge.

Missouri Pacific Railroad Co. appeals a judgment which included one million dollars in punitive damages to Overbrook Farmers Union Cooperative Association. Overbrook cross appeals, asserting errors in limiting punitive damages to one million dollars and in other rulings.

Missouri Pacific owns and operates railroad lines subject to Interstate Commerce Commission ("ICC") jurisdiction, including the 40.1 mile Topeka Branch which serves two Overbrook grain elevators—one located at Overbrook, Kansas and the other located at Michigan Valley, Kansas. Overbrook purchases grain from area farmers, stores the grain in elevators, and markets it to independent buyers. Overbrook also receives shipments of fertilizer from independent suppliers which it stores at its facilities and sells to local farmers.

The Topeka Branch experienced extensive flood damage in late June 1984. On July 5, Missouri Pacific instituted an "embargo" of service. An embargo is a temporary measure permitted by the ICC when a carrier is unable to perform its functions as a common carrier. In September 1985, while the embargo was still in effect, Overbrook leased another elevator in Michigan Valley.

Missouri Pacific and Overbrook negotiated a series of "allowances"—i.e., rate reductions—to compensate Overbrook for the cost of trucking commodities to or from alternative railheads. On March 4, 1987, rail service had not been restored, and Overbrook declined to accept Missouri Pacific's most recent offer of substitute truck service. Overbrook then filed a one-count action alleging Missouri Pacific's violation of the Interstate Commerce Act provision requiring a regulated railroad to maintain service on reasonable request. 49 U.S.C. § 11101(a).

The district court granted Missouri Pacific's motion to refer this question to the ICC. At the same time, Missouri Pacific sought formal ICC authority to abandon part of the Topeka Branch. The ICC initially granted this request, but later withdrew that decision. The ICC determined that the embargo had become unreasonable and left the issue of damages to the district court. *Overbrook Farmers Union Coop. Assoc.*, 5 I.C.C.2d 316 (1989).

The district court awarded compensatory damages on three grounds: (1) increased trucking costs, (2) additional elevator throughput costs—i.e., the cost of processing products at a second elevator; and (3) lost profits. The district court then awarded one million dollars in punitive damages.

## Missouri Pacific's Appeal

### I. *Availability of Punitive Damages*

Missouri Pacific argues: (1) the Interstate Commerce Act does not provide for punitive damages for the statutory violation of refusal to provide service, and, in the alternative, (2) the evidence did not support an award of punitive damages. Before we reach those questions, however, we reject Overbrook's waiver argument based upon Missouri Pacific's failure to file objections to a magistrate judge's memorandum. Overbrook did not raise before the district court the question of waiver, and it is not appropriate to raise the point for the first time on appeal. It is clear from the record, in any event, that Missouri Pacific never at any time waived its objection to punitive damages.

The district court understandably found that Missouri Pacific had acted in willful violation of 49 U.S.C. § 11101(a). The court

---

* Honorable Alfred T. Goodwin, United States Circuit Judge for the Ninth Circuit, sitting by designation.

found that the conduct was sufficiently egregious to warrant exemplary damages. The appeal thus raises a much discussed but still unsettled question whether the Interstate Commerce Act includes in its remedial scheme punitive damages for discontinuing carrier service.

This Circuit has considered many railroad cases, but none has been cited definitively holding that punitive damages may, or may not, be awarded for a willful refusal to provide rail service. Case law has been cited on both sides of the punitive damages issue. *Compare Miller v. AAACon Auto Transport, Inc.* 447 F.Supp. 1201, 1205 (S.D.Fla.1978) (stating potential availability of punitive damages); *and Wright v. Chicago, B. & Q. R.R.,* 223 F.Supp. 660 (N.D.Ill.1963) (awarding punitive damages); *with Pennsylvania R.R. v. International Coal Mining Co.,* 230 U.S. 184, 33 S.Ct. 893, 57 L.Ed. 1446 (1913) (finding that predecessor statute "provided for compensation—not punishment"); *and Genstar Chemical, Ltd. v. ICC,* 665 F.2d 1304, 1309 (D.C.Cir.1981), *cert. denied,* 456 U.S. 905, 102 S.Ct. 1750, 72 L.Ed.2d 161 (1982) (stating that Act "provides not for penalties but for compensation for actual harm").

Overbrook attempts to distinguish the cases relied upon by Missouri Pacific by stressing that they involved rate violations rather than service violations. This distinction is less than compelling, however, because the remedial provision pertaining to this section applies to both service and rate violations.

■ Section 10103 states: "Except as otherwise provided in this subtitle, the remedies provided under this subtitle are in addition to remedies existing under another law or at common law." The clause indicates that remedies under the Act are cumulative and in addition to other remedies existing at common law. *Texas & Pac. Ry. Co. v. Abilene Cotton Oil Co.,* 204 U.S. 426, 446–47, 27 S.Ct. 350, 357–58, 51 L.Ed. 553 (1907). State courts retain concurrent jurisdiction to impose damages arising from a carrier's failure to discharge its common law duty to provide service upon reasonable request, so long as the matter does not call for exercise of administrative discretion. *Pennsylvania R.R.*

*Co. v. Puritan Coal Mining Co.,* 237 U.S. 121, 35 S.Ct. 484, 59 L.Ed. 867 (1915).

■ Conversely, common law remedies are not available to undermine judgments of fact and of reasonableness made by the Interstate Commerce Commission. *Abilene Cotton Oil Co.,* 204 U.S. at 442, 27 S.Ct. at 356 (striking down state common law cause of action against carrier's allegedly unreasonable rates when ICC had previously determined rates to be reasonable); *see Chicago & N.W. Transp. Co. v. Kalo Brick & Tile Co.,* 450 U.S. 311, 327, 101 S.Ct. 1124, 1135, 67 L.Ed.2d 258 (1981) (Act preempts common law causes of action for negligence and tort when ICC has made judgments of fact and reasonableness necessary for approving carrier's application for abandonment).

■ In this case, Overbrook filed a claim of a § 11101(a) violation in federal district court. Overbrook did not include separate state causes of action to supplement the compensatory remedies provided by § 11705. The district court, acknowledging the Commission's primary jurisdiction, referred the matter to the Commission, which concluded that Missouri Pacific's conduct violated § 11101(a) by not providing service upon reasonable request. *Overbrook Farmers Union Coop. Ass'n—Petition for Declaratory Order—Violation of 49 U.S.C. § 11101(a),* 5 I.C.C.2d 316, 326 (1989). Although the Supreme Court is silent on whether state tort remedies can enhance statutory remedies based on a Commission's finding of unreasonableness, Overbrook did not file state causes of action, and therefore cannot rely on the savings clause.

In awarding punitive damages, the district court stated:

> The court finds that the conduct of the defendant railroad in terminating service to plaintiff was an intentional act. It was unlawful, and thus it was wrongful. It was in direct violation of its duty as a regulated common carrier to provide service until such time as it was relieved of that duty by the Interstate Commerce Commission. The conduct clearly falls within the definition of conduct for which punitive damages should be awarded.

**364**

Under the quoted reasoning, because virtually all rail carrier conduct that violates the Act is intentional, all violators would be liable for punitive damages. If punitive damages are appropriate, there should be a limiting principle. Without some reasonably objective standard, punitive damage claims will accompany every action filed by shippers aggrieved by refusal to provide service. At a minimum, before punitive damages can be imposed upon a carrier operating under an ICC order to provide service, the plaintiff must seek relief in addition to the statutory relief provided by § 11705(b). If common law or state law remedies are invoked, and if not preempted by the Commerce Act, the trial court must make specific findings of conduct amounting to bad faith, oppressive or discriminatory purpose, or flagrant defiance of the regulatory scheme, and find little or no mitigating equities in favor of the carrier. Overbrook has not invoked state causes of action to trigger the savings clause.

The ICC has set its face against punitive damages for violations of the Act. *See especially Henderson v. Southern Ry.*, 258 I.C.C. 413, 419–21, *aff'd*, 80 F.Supp. 32 (1948), *rev'd on other grounds*, 339 U.S. 816, 70 S.Ct. 843, 94 L.Ed. 1302 (1950) (holding that punitive damages are not awardable under Act to remedy racial discrimination in passenger service).

Overbrook suggests that the ICC has misinterpreted *dicta* in *Pennsylvania R.R. v. International Coal Mining Co.* It is true that the issue before the Supreme Court in *Pennsylvania R.R.* was not the availability of a punitive damages award. Nonetheless, the Court's ruling is on point. The plaintiff sought to recover as actual damages the difference between the rate it paid the defendant railroad and the lower rate the railroad had charged other shippers. The Court rejected this request on the ground that a remedy based upon measuring discriminatory rates might provide plaintiff with a windfall greater than his actual damages and therefore could constitute an unauthorized punishment. 230 U.S. at 200.

A number of Supreme Court decisions and ICC determinations limit, by way of *dicta*, carrier liability to actual damages for rate violations remedied by 49 U.S.C. § 11705(b) (formerly § 8). *See, e.g., Pennsylvania R.R. Co. v. International Coal Mining Co.*, 230 U.S. at 200, 33 S.Ct. at 897 (*dicta*); *Hudson Mule Co. v. Louisville & Nashville R.R.*, 129 I.C.C. 365, 371 (1927) (no authority to penalize, *dicta*, as no actual damages were proven).

Remedies are set forth in 49 U.S.C. § 11705(b)(2). This section provides for recovery of "damages sustained by a person as a result of an act or omission" of a common carrier in violation of the Act. 49 U.S.C. § 11705(b)(2). The ICC has consistently read that language to deny punitive damages. However, neither this Court nor the Supreme Court has held that the § 11705 remedies are exclusive.

Common sense, as well as history, suggest that unless the possibility of punitive damages exists as a sanction for willful violations of an ICC order to resume service, railroads will be inclined to pursue a cost-benefit approach in deciding whether to repair damaged or obsolete trackage or to pay compensatory damages based on intermode cost comparisons. History also teaches that the railroads have enjoyed a close, and often cordial relationship with the ICC over the last three quarters of a century. Thus, it is not surprising to find no ICC cases awarding punitive damages. Notwithstanding the trial court's argument that, in a proper case, punitive damages should be available as a remedy for willful refusal to provide service, neither Congress nor the Supreme Court has yet defined what is a proper case.

In conclusion, we are unpersuaded that punitive damages are available for a § 11101(a) service violation under the § 10103 savings clause. The Supreme Court has determined that § 11705 remedies are solely compensatory. Assuming without deciding that the savings clause could, in the proper case, allow punitive damages for egregious violations of the Act, this is not the case to initiate a revolution in refusal of service actions. Accordingly, we do not reach the alternative ground of Missouri Pacific's appeal, that the evidence did not support the award of punitive damages.

### III. *Mitigation Defense*

Missouri Pacific contended at trial that Overbrook failed to mitigate damages when it: (1) refused Missouri Pacific's offer of a trucking allowance; (2) failed to truck its grain to the Topeka market; (3) blocked the sale of the Topeka line to a new operator in late 1987; and (4) leased another facility in Michigan Valley on the embargoed line during the embargo.

The district court discussed the first argument in detail prior to rejecting it. The court then stated: "Other mitigation arguments have been presented by the defendant. They have been considered by the court, and are also rejected." Missouri Pacific asserts, and we agree, that the court's statement on these issues provides no basis for appellate review. However, Missouri Pacific still has the burden of showing that the trial court erred in refusing to accept the carrier's argument that the shipper's efforts to mitigate its losses were, as a matter of law, a defense to the compensatory damage award. *Cf. Eastman Kodak Co. v. Westway Motor Freight, Inc.*, 949 F.2d 317, 320 (10th Cir.1991) ("The defendant has the burden to prove that the plaintiff did not exercise reasonable diligence in mitigating its damages.")

We have examined the record, and find that the district court's rejection of the carrier's second and third arguments is supported by evidence in the record and is legally correct.

■ The district court's dismissal of the fourth argument without comment is more troubling. Although Overbrook correctly notes that it had no duty to disrupt its business operations to accommodate the fiscal concerns of the railroad following the flood, it is less clear that Overbrook had a right to *expand* its operations when it had knowledge of the carrier's inability to provide service.

On the expansion of operations issue, it would have been helpful if the district court had stated its reasoning. For example, the court may have determined that the forced curtailing, or delayed expansion of Overbrook's business would have been unreasonable under the circumstances. The parties and any reviewing court should be able to know what the trial court deemed appropriate in mitigation following a flood or other natural interference with normal operations of both the railroad and the shipper. On remand, this finding should be clarified.

### IV. *Grounds for Compensatory Damages*

Missouri Pacific contends that the district court relied upon uncertain calculations of Overbrook's actual damages stemming from: (1) the cost of using its own trucks to haul grain from its Overbrook and Michigan Valley elevators to its Scranton elevator; and (2) the cost of throughputting the grain a second time at the Scranton elevator.

■ First, Overbrook's calculation of the cost of using its own trucks was based on the testimony of Overbrook's general manager, Larry Coffman. Coffman's figures were a rough approximation of the cost. After a reduction in Coffman's figures by the district court, the court awarded damages based on unit costs of 2.8 cents per bushel for in-house trucking. This calculation was not unreasonable in light of outside trucking costs, which ranged from 4.5 to 6.2 cents per bushel.

The calculation of throughput costs could have been more clearly explained. Overbrook calculated its elevator throughput cost by adding all the costs associated with its elevators (except loan expense and depreciation) for each year, and dividing each year's cost by the bushels of grain received by the cooperative in that year. While this method of calculation may have been generous to Overbrook, the trial court had heard a substantial volume of evidence on damages, and in light of the railroad's election to assume the risk that some damages would be assessed, we are not inclined to second guess the trier of fact on these details. *Whiteley v. OKC Corp.*, 719 F.2d 1051, 1058 (10th Cir. 1983) (strong showing of abuse of discretion necessary before reviewing court will reverse excessive verdict).

### Overbrook's Cross–Appeal

#### I. *Sufficiency of Award of Punitive Damages*

Overbrook asserts that the punitive damages were grossly inadequate to serve an exemplary purpose because: (1) by its own admissions the railroad made $279,000,000 from 1985 to 1989; and (2) Missouri Pacific

has continued its unlawful practices. *See Louisiana Railcar, Inc. v. Missouri Pac. R.R.*, 5 I.C.C.2d 542 (1989), *on reopening*, 7 I.C.C.2d 30 (1990). Because we have held that the remedies available in this case did not include an award of punitive damages, we do not reach these claims in the cross appeal.

## II. Compensatory Damages for Deferred Bid Milo Sales

Overbrook claims that the trial court erred in not awarding compensatory damages for deferred bid milo sales. The district court found that there was insufficient evidence whether Overbrook would have made deferred bid sales during the embargo period and that awarding damages on this basis would somehow allow the plaintiff to "double dip"—*i.e.*, allow the plaintiff to be compensated for selling the same grain twice. While we might not have put the matter exactly as the trial court did, we agree that there was not enough proof of prospective deferred bid sales to remove that matter from speculation. Accordingly, we find no error on this point.

## III. Motion to Amend Complaint

Overbrook argues that the district court abused its discretion in denying Overbrook's motion to amend its complaint to add Union Pacific as a defendant. Union Pacific owns 100% of the corporation that owns Missouri Pacific. The court denied the motion on the grounds that it would have injected unreasonable delay into the proceeding. We agree. The motion was untimely. *Sooner Products Co. v. McBride*, 708 F.2d 510, 512 (10th Cir.1983) (denial of motion to amend complaint reviewed for abuse of discretion).

## IV. Prejudgment Interest

The district court denied Overbrook's motion for prejudgment interest on the ground that the compensatory damages were unliquidated claims prior to judgment, and that the railroad had not had the use of the money during the litigation. We hold the district court applied an improper standard in making this determination. Whether or not the damages were liquidated is not dispositive under *federal* law. *Cf. Royal College Shop v. Northern Ins. Co.*, 895 F.2d 670 (10th Cir.1990) (applying Kansas law in diversity case). Moreover, Missouri Pacific did have use of the money equivalent to the damages awarded to Overbrook. On remand, the court should investigate two matters: (1) whether the award of prejudgment interest would serve to compensate the injured party; and (2) whether the equities preclude an award. *Eastman Kodak Co. v. Westway Freight, Inc.*, 949 F.2d at 321.

## V. Conclusion

The judgment is vacated. The cause is remanded for reconsideration of the remaining questions. On the Missouri Pacific's appeal from the award of compensatory damages, the question of Overbrook's expanded activity in the face of the embargo should be reexamined with adequate findings to support the trial court's decision on the impact of Overbrook's conduct on the duty to mitigate. On the cross appeal, the denial of prejudgment interest is vacated and that question is remanded for further consideration and adequate findings. The award of punitive damages is reversed. No party shall recover costs on this appeal.

**REVERSED** in part, **VACATED** in part, and **REMANDED**.