Joe Nathan COLEMAN et al., Plaintiffs,

v.

HUMPHREYS COUNTY MEMORIAL HOSPITAL et al., Defendants.

No. GC 68–47.

United States District Court,
N. D. Mississippi,
Greenville Division.

June 15, 1972.

Melvyn R. Leventhal, of Anderson, Banks, Nichols & Leventhal, Jackson, Miss., for plaintiffs.

Semmes Luckett, Clarksdale, Miss., for defendants.

## MEMORANDUM OF DECISION

ORMA R. SMITH, District Judge.

This class action, filed October 25, 1968, seeks injunctive relief to restrain defendants from operating the Humphreys County Memorial Hospital, at Belzoni, Mississippi, in a racially discriminatory manner.

After the filing of the complaint the court set the action down for hearing on plaintiffs' application for the issuance of a preliminary injunction. The court directed that the action be submitted and tried on the merits at that time.

The hearing was set for November 26, 1968. The court, however, before the date for the hearing, entered an order cancelling the hearing and directing that the application be heard at a later date, when counsel notified the court that all discovery proceedings had been completed.

There was no further action by the court until the action was set for a status report on January 20, 1970. At that time counsel for the parties announced to the court that they were of the opinion that a final decree upon which they could agree might be submitted to the court, thereby disposing of the action.

In response to this announcement, the court entered an order providing that counsel should submit the decree to the court within 30 days, or, in lieu thereof, each counsel should submit a decree for the court's consideration, it appearing that counsel might hold different views on some aspects of the matter.

On March 11, 1970, the court extended the time for submission of the decree or decrees until March 16, 1970.

The decree or decrees were not forthcoming, and the court scheduled status hearings on the action for June 30, 1970, January 5, 1971, and July 15, 1971. On the occasion of the July 15, 1971 hearing the court entered an order directing counsel to prepare and submit to the court a stipulation of facts, the representation having been made to the court that there was no substantial dispute between counsel as to the facts in the case.

The order did not fix a date for the filing of the stipulation, but, contained a briefing schedule for the parties, once

the stipulation had been filed. Plaintiffs were granted ten days after the filing of the stipulation within which to file a brief in support of their position. Defendants were granted ten days thereafter within which to reply, and plaintiffs were granted ten days after receiving defendants' reply, within which to respond.

The court set a hearing on the status of the action for January 27, 1972. Counsel for the parties appeared at the hearing, and announced to the court that the stipulation had been filed with the clerk on January 24, 1972. Since that time the briefs have been filed and have been given due consideration by the court. The action is now ripe for decision.

This Memorandum contains the court's findings of fact and conclusions of law as required by Rule 52(a) F.R.Civ.P.

The three plaintiffs are black residents and citizens of Humphreys County, Mississippi. The Humphreys County Memorial Hospital (hospital) is situated in the City of Belzoni, and serves Humphreys County and the surrounding trade territory. The 1970 census of Humphreys County shows 5089 white, 9460 black and 52 "other" residents of the county.

The defendant hospital was erected and is now owned and is being operated by Humphreys County, Mississippi. The construction was accomplished in 1950 with the assistance of the United States of America, pursuant to the provisions of the Hill-Burton Act.[1] The hospital is operated by the county through a board of trustees, the members of which are appointed by the Humphreys County Board of Supervisors pursuant to the provisions of Miss. Code Ann. § 7129–55 (1971 Cum.Supp.). The trustees serve five year terms which are staggered so that each year

there is a new appointment to be made by the Board of Supervisors.

From the time the hospital opened in 1950 until the filing of this action in 1968 defendants practiced racial discrimination in operating the hospital. It is not necessary for the court to describe in this decision the details of the discriminatory practices, since the parties have stipulated that such was the practice during this period of time. The details of the discriminatory practices are clearly defined and enumerated in the stipulation which has been filed with the court.

In July 1965 the three named plaintiffs in the action sub judice, with one other black citizen of the community, brought a civil action against the members of the Board of Supervisors of the county, the municipal authorities of the City of Belzoni and other elected officials of the county and city. They alleged that the public officials, against whom the suit was filed, furnished municipal and governmental service on a racially discriminatory basis. The plaintiffs attacked in that suit the racially discriminatory manner in which the hospital was being operated.

When the 1965 action was tried by this court in 1968, the court held that relief against the hospital could not be afforded plaintiffs because the hospital and its board of trustees had not been made parties to the action. Coleman v. Aycock, 304 F.Supp. 132 (N.D.Miss. 1969). Coleman v. Aycock was tried by the court in mid-September 1968 but the opinion in the case was not rendered until September 22, 1969. After the trial, but before the decision, the complaint in this action was filed.

The court said, in *Aycock*:

"The Court takes judicial knowledge of the fact that a suit is now pending in this Court to desegregate the hospital, brought by three of the four

1. Hospital Survey and Construction Act, Aug. 13, 1946, Ch. 958, 60 Stat. 1040, as amended.

plaintiffs herein, against the hospital and its Board of Trustees. Coleman v. Humphreys County Memorial Hospital, Civil Action No. GC 6847.

Plaintiffs contend that regardless of the fact that the hospital suit is pending in the Court, nevertheless the Court should enjoin the members of the Board of Supervisors in the case sub judice from contributing county funds for the operation or support of the hospital unless and until the hospital abandons its policies of racial segregation.

The Court is of the opinion and so finds that the frontal attack in the hospital suit is sufficient to afford plaintiffs and the class they represent any relief to which they may be entitled, and that injunctive relief in the case sub judice is not necessary or proper under the circumstances. . . ." 304 F.Supp. at 140.

The racially discriminatory practice was continued by the hospital until after the hearing in *Aycock*, and even after the filing of the action sub judice. It was not until February 11, 1969 that defendants took affirmative action to desegregate its facilities. It was on that date that defendant Board of Trustees adopted a resolution declaring its intention to enter into an assurance of compliance with the Department of Health, Education and Welfare (HEW) that the hospital would comply with the requirements of Title VI of the Civil Rights Act of 1964 and with the requirements of HEW issued pursuant thereto.

The stipulation filed by the parties reflects that the hospital no longer segregates patients by wings, the waiting rooms are no longer segregated by custom or policy, and that black employees can and do utilize the hospital's cafeteria. The only area on which there seems to be some dissatisfaction at the present is in the area of employment. Counsel for plaintiffs admits in his brief that employment opportunities for blacks have improved since November 1968, but contends that defendants have only scratched the surface and that the essential aspects of defendants' past policies of racial discrimination in employment are manifestly in evidence today.

Responding to counsel's criticism of defendants' practices in employment, defendants contend that plaintiffs have no standing to challenge employment practices in the hospital. The stipulation provides:

"Named plaintiffs are residents of Belzoni and/or Humphreys County, Mississippi and have used the waiting rooms and/or outpatient clinic of the defendant hospital. None of the named plaintiffs have ever been employed by or applied for employment with the defendant hospital."

Plaintiffs, black adult residents and citizens of the City of Belzoni and Humphreys County, Mississippi, bring the action on their own behalf and on behalf of all others similarly situated. It is alleged that the class includes all black residents of the area served by the hospital who have been victims of the hospital's racially discriminatory policies.

The complaint alleges that the facilities and services of the hospital are maintained and offered on a racially discriminatory basis and that unequal employment opportunities and compensation are provided and afforded black persons by the hospital. The complaint includes a prayer for general relief.

■ It is quite clear to the court that in the area of public facilities and institutions, such as schools, hospitals, libraries and the like, where the facility or institution is one maintained for the benefit of the general public, any member of a race which is subjected to unlawful racially discriminatory policies, and who has suffered a deprivation of any rights, privileges, or immunities secured by the Constitution and laws of the United States by reason thereof, has standing to bring a class action against such fa-

cilities or institutions for the elimination of such discriminatory policies and to attack all phases of the institution's operation where such discriminatory practices and policies exist.

The court, therefore, finds that plaintiffs have standing to prosecute the action sub judice on their own behalf and on behalf of all other black residents and citizens of the area served by the hospital. The court also holds that plaintiffs have standing to attack the employment policies and practices of the hospital. Rackley v. Board of Trustees of Orangeburg Reg. Hosp., 310 F.2d 141, 143 (4th Cir. 1962); Cypress v. Newport News General and Nonsectarian Hospital Association, 375 F.2d 648, 656 (4th Cir. 1967); Carr v. Conoco Plastics, Inc., 295 F.Supp. 1281, 1289 (N.D. Miss.1969) affirmed 423 F.2d 57 (5th Cir. 1970).

In *Conoco* this court said:

"This is supported by numerous authorities. Singleton v. Board of Commissioners of State Institutions, 5 Cir., 1966, 356 F.2d 771, where public facilities were involved and the Court held 'the plaintiffs must show past use of the facilities, where feasible, and a right to, or a reasonable possibility of future use.' Anderson v. City of New Albany, 5 Cir., 1963, 321 F.2d 649, where the Court held that in a class action to enjoin enforcement of segregation of the races in certain public and private facilities of the city it was not required that a plaintiff must have subjected himself to arrest before bringing the action. Cypress v. Newport News General & Nonsectarian Hospital Ass'n., 4 Cir., 1967, 375 F.2d 648, where the Court held that class actions are to be considered in light of the particular circumstances of the case and sustained a class action in the suit against a hospital to open its staff to Negroes. Rackley v. Board of Trustees of Orangeburg Reg. Hospital, 4 Cir., 1962, 310 F.2d 141, a suit to desegregate a hospital where the Court held that plaintiff would not be required to prosecute separate suits for each activity or department of the hospital."

The main issue submitted to the court for its decision involves the granting of injunctive relief to plaintiffs.

Defendants contend that subsequent to the filing of the action sub judice they have remedied the conditions of which plaintiffs complain, for which reason the action is now moot. Specifically defendants assert "[i]t follows that since the allegedly illegal conduct of the defendants was brought to an end in February, 1969, this action should be treated by the court as moot *unless it is convinced that there is a reasonable probability that defendants will again engage in the practices complained of.*" Br. P. 12 (Emphasis supplied).

On the other side of the coin, plaintiffs call to the attention of the court their long struggle to obtain from defendants the rights and privileges guaranteed to them by the Constitution and Laws of the United States and of which they have been deprived since the hospital opened its doors to serve the public.

It would serve no useful purpose for the court to review the argument of the parties. Suffice to say, plaintiffs have been successful in their efforts to eliminate the racially discriminatory policies practiced by the hospital at the time of the filing of the action sub judice, unless, it may be said that such practices, to some extent, have carried over and are still being followed in the employment area of the hospital.

The parties have cited numerous cases in their briefs on the issue before the court. When analyzed, the cases cited support the rule that the granting of an injunction, to a large extent, is discretionary with the court.

The rule recognized in all jurisdictions and which must furnish guidance for the court in the action sub judice is

contained in United States v. W. T. Grant Co., (1953) 345 U.S. 629, 632, 73 S.Ct. 894, 897, 97 L.Ed. 1303, at 1309, where the court said:

"Both sides agree to the abstract proposition that voluntary cessation of allegedly illegal conduct does not deprive the tribunal of power to hear and determine the case, i.e., does not make the case moot. (Citations omitted) A controversy may remain to be settled in such circumstances, (Citation omitted) e.g., a dispute over the legality of the challenged practices. (Citations omitted) The defendant is free to return to his old ways. This, together with a public interest in having the legality of the practices settled, militates against a mootness conclusion. (Citation omitted) For to say that the case has become moot means that the defendant is entitled to a dismissal as a matter of right. (Citation omitted) The courts have rightly refused to grant defendants such a powerful weapon against public law enforcement.

The case may nevertheless be moot if the defendant can demonstrate that 'there is no reasonable expectation that the wrong will be repeated.' The burden is a heavy one. . . ."

It is noted that defendants have the heavy burden to demonstrate that "there is no reasonable expectation that the wrong will be repeated." Id. 345 U.S. at 633, 73 S.Ct. at 897, 97 L.Ed. at 1309.

█ The hospital is operated under the direction and supervision of seven trustees, who are appointed for staggered terms by the Board of Supervisors of Humphreys County. Members of the Board of Supervisors are elected every four years. There is no real assurance that the individuals who elected to desegregate the hospital facilities in February 1969, will continue to manage and direct the operation of the hospital for any appreciable period of time in the future. It is reasonable to assume that the personnel of both boards will change from time to time. Under such conditions, in the absence of injunctive relief, there can be no real assurance that a change in policy will not be made when and if there is a change in the personnel of the board responsible for the operation of the hospital.

The long and steadfast resistance of the hospital and county authorities to the change in the policies and practices of the hospital, as evidenced by the record in this case and the facts reflected in the court's opinion in *Aycock*, convinces the court that defendants have not met the heavy burden imposed upon them in this case. The court cannot say on the record before him that there is no reasonable expectation that the wrong will be repeated.

The court holds that justice and equity requires the court to grant plaintiffs the injunction which they seek.

An appropriate injunctive order will issue forthwith.