**Eunice B. LOCKE, Plaintiff-Appellant,**

v.

**BOARD OF PUBLIC INSTRUCTION OF PALM BEACH COUNTY et al., Defendants-Appellees.**

**No. 73-2273.**

United States Court of Appeals, Fifth Circuit.

Aug. 19, 1974.

William M. Holland, West Palm Beach, Fla., for plaintiff-appellant.

Beth L. Don, Atty., Washington, D. C., for the Commission (EEOC) amicus curiae.

Michael E. Jackson, Palm Beach, Fla., for defendants-appellees.

Before DYER, MORGAN and RONEY, Circuit Judges.

LEWIS R. MORGAN, Circuit Judge.

In December, 1972, Eunice B. Locke, plaintiff-appellant herein, filed a complaint in Federal District Court for the Southern District of Florida alleging that the Board of Public Instruction of Palm Beach County had discriminated against her because of her race and sex and in so doing had violated the equal protection and due process clauses of the Constitution, the guidelines set out in Singleton v. Jackson Municipal Separate School District (5th Cir. 1970), 419 F.2d 1211, the Civil Rights Act of 1954, the Equal Opportunity Act of 1972, as well as the guidelines as set out by various governmental agencies administering the above-mentioned statutes. Palm Beach County filed a motion to dismiss and a hearing was held. The district court, after hearing testimony and considering the record in the cause, denied plaintiff's application for a temporary injunction and granted the defendants' motion to dismiss. Plaintiff Locke appeals both portions of that order.

## I. FACTS

The plaintiff-appellant, Eunice B. Locke, at the time of suit was a classroom teacher holding a continuing contract with the Board of Public Instruction of Palm Beach County. Plaintiff Locke was certified in French, English, Music Education, and Junior College. She had had a minimum of 12 years teaching experience, most of which involved the teaching of music. Mrs. Locke's basic duties involved classroom teaching; however, she received a special supplement to compensate her for

extra duties she performed as music instructor for choral groups.

At the end of June, 1972, Mrs. Locke requested a leave of absence from her teaching position for the purpose of having a child. The school board, of course, granted this request and in addition sent Mrs. Locke a letter which reiterated the published policy of the school board as to maternity leave. That letter stated in part:

"According to the Board's policy on maternity leave of absence, 'maternity leave of absence will be given to instructional personnel for the remainder of the school year. If there is a vacancy sooner for which an individual is considered qualified by the County Superintendent, duties may be resumed subject to a period of at least 90 days having elapsed since the birth of the child or if the time has not been 90 days, subject to the attending physician's statement certifying the person is able to resume work. If the school year closes without return to a position, every effort will be made toward placement the following year. In all instances of returning to employment it is necessary that a letter be submitted to the Superintendent stating that such is desired. Instructional personnel are not eligible to substitute when they are on any type of authorized leave'."

On August 14, 1972, the regular school session started for Palm Beach County, and on August 21, Mrs. Locke gave birth to her child. Within a month of the birth of her child, Mrs. Locke requested that she be returned to her teaching position. This request was accompanied by a doctor's certificate.

It is important to note at this time that Palm Beach County for 17 years prior to 1972 had been involved in extensive litigation concerning integration of Palm Beach County schools' student bodies, administrators and teachers. In the fall of 1972, they were attempting to comply with the mandate of Singleton v. Jackson (5th Cir. 1970), 419 F.2d 1211, and the guidelines set down by the Office of Civil Rights and the Department of Health, Education and Welfare as to integration of their school system. In attempting to strictly comply with these various federal orders and mandates, Palm Beach County was forced to adopt a quota system as to the black to white ratio in not only student bodies, but also in faculties and administrations. There was a substantial reshuffling of faculty and administration at this time in order to meet these quotas.

As was stated above, within a month of the birth of her child, Mrs. Locke requested reinstatement in her old position. On September 22, 1972, she received a letter from the principal of the high school where she had taught the previous year. That letter stated:

I have received a copy of your recent letter to Mr. Early relative to your returning to the school system. Since I am not in compliance with our racial quota for instructional staff members, I have discussed with Mr. Harold Brake the possibility of transferring a white music teacher here and you replacing the transferred teacher. I will discuss this with other principals to see if we can expedite this matter for the children sorely need your services.

As it turned out, such a transfer did not take place and the only job opening the school system had at that time was that of an English teacher at a different junior high school. On October 9, 1972, Mrs. Locke was back at work, but at a different school and teaching English. Her base salary was the same, and she was offered a supplement if she would agree to do the same extra work she had done the previous year. The testimony at the hearing shows that Mrs. Locke refused the supplement saying that too much work was involved.

In December of 1972, Mrs. Locke filed suit in the district court alleging that because she was black and female she was discriminated against. The mechanics of this alleged discrimination involve the application of the various federal guidelines to the school at which Mrs. Locke had been teaching. Mrs.

Locke asserts that because she is female and susceptible to pregnancy, and for that reason became pregnant, she was discriminated against when her old teaching position, due to her leave status, was declared vacant and the Board of Public Instruction manipulated that vacancy so as to comply with the various federal orders. This discrimination, Mrs. Locke alleges, violated not only her rights under the Fourteenth Amendment to the Constitution of the United States, but also her rights to equal employment and her rights as a woman.

Meanwhile, after the action had been filed in the Federal District Court, Mrs. Locke's husband, who is also an employee of the Board of Public Instruction of Palm Beach County, was assigned to a position some distance (40 to 50 miles) from the Locke's home and Mrs. Locke's prior teaching location.[1] Mrs. Locke then requested that she be transferred to a school closer to her husband's place of employment. She was then offered, as per her request, a position teaching music, and in addition was offered a supplement doing extra music work. She accepted and moved her family to Pahokee, where Mr. and Mrs. Locke and family now reside. There is no indication in the record of the court below or in the oral arguments before this court that the transfer of Mrs. Locke's husband was in any way related to Mrs Locke's transfer, nor is there any such claim. Furthermore, a new maternity leave policy was adopted on December 12, 1972, and the old maternity leave policy which Mrs. Locke came under is no longer in effect. Also, although Mrs. Locke had a continuing contract with the school system, it was specifically stated therein that she was subject to transfer anywhere within that school district.[2]

1. Palm Beach County is more than twice the size of the State of Rhode Island, with most of its 350,000 residents clustered along the Atlantic Coastline. In the west end of the county are the communities of Belle Glade and Pahokee and the farming areas of the perimeter of Lake Okeechobee. The schools in the west end of the county are some 40 miles distant from the schools in the coastal area.

2. The text of appellant Locke's contract is set out below:

Form I-CC

## CONTINUING CONTRACT OF EMPLOYMENT FOR INSTRUCTIONAL AND ADMINISTRATIVE OR SUPERVISORY PERSONNEL OF PUBLIC SCHOOLS

---

**EXPLANATORY NOTE:**

To be used only for instructional and administrative or supervisory personnel holding a regular certificate (Graduate; Post Graduate; Advanced Post Graduate; Professional, based on a Graduate Certificate; Life Graduate State, based on a Graduate State Certificate granted on a four-year degree) based at least on graduation from a standard four-year college and who have completed the necessary period of service as provided by Section 231.36, Florida Statutes.

---

STATE OF FLORIDA

COUNTY OF PALM BEACH } SS

This contract of continuing employment made and entered into this the 4th day of September 19 64 by and between the Board of Public Instruction of Palm Beach County, the Party of the First Part, hereinafter called the County Board, and Mrs. Eunice B. Locke of West Palm Beach, Palm Beach, Florida, holding a Graduate Post Office County teacher's certificate issued in accordance with the Laws of Florida, and now Identify certificate (see explanatory note above) in force, Party of the Second Part, hereinafter called the Employee.

WHEREAS, Section 231.36, Florida Statutes, provides for continuing contracts with each County Board of Public Instruction for members of the instructional, administrative, and supervisory personnel in each county school system, who are qualified by the terms of said Law; and

WHEREAS, the County Board has appointed and employed the Employee for continuing employment as Teacher in the Pleasant City School Position (Teacher, Principal, Supervisor, or other Position) of the County, at an annual salary to be determined by a salary schedule heretofore or hereafter adopted by the County Board; NOW THEREFORE, it is agreed by and between the Parties hereto as follows:

1. The County Board enters into this contract of continuing employment with the Employee pursuant to the resolution of the County Board heretofore adopted, whereby the Employee was appointed and employed as above set out.

2. During the employment of the Employee, pursuant to this contract, the County Board agrees to pay to the Employee the annual salary fixed by the salary schedule heretofore or hereafter adopted by it and in the manner and at the times prescribed by this contract, the Law and regulations adopted pursuant thereto.

It should be noted at this point that in her original complaint the only relief sought by Mrs. Locke other than money damages was an injunction restraining the school system from implementing its present leave policy against the plaintiff in a discriminatory manner, and in that vein it was requested that Mrs. Locke be returned to her former position as a music and vocal teacher. Since that time, as stated above, a new maternity leave policy has been adopted for Palm Beach County and Mrs. Locke has been assigned to a position where she is both a music and vocal teacher with supplement, as she was before. This assignment was at her own request.

## II. MOOTNESS

It is the opinion of this court that the issues presented in this case as to the individual plaintiff, Mrs. Locke, are moot and the appeal as to her individually should be dismissed.

Although neither party has urged that this case is moot, resolution of the question is essential if federal courts are to function within their constitutional sphere of authority. It has frequently been repeated that federal courts are without power to decide questions that cannot affect the rights of litigants in the case before them. Local No. 8-6, Oil Workers Union v. Mis-

3. The Employee hereby accepts the above set out appointment and employment and agrees to perform in a thorough and professional manner all of the duties of the position for which the Employee is employed, under the direction of the County Superintendent of Public Instruction of the County, and to observe faithfully and enforce the rules and regulations lawfully prescribed by legally constituted school authorities insofar as such rules and regulations may be applicable to the position held by the Empl

4. The services to be performed hereunder by the Employee shall begin on the _____ day of _____ 19__, and are to be performed in the position and school above named. It is mutually understood and agreed that the Party of the First Part may, upon recommendation of the County Superintendent, transfer and assign the Party of the Second Part to a similar position in any other school of the county, provided that in the event of such transfer, the duties of the Party of the Second Part shall be similar to the duties originally assigned and the salary shall be in accordance with the salary schedule heretofore mentioned.

5. The services to be performed by the Employee shall be such as are required by Law and the lawful rules and regulations of the State Board of Education and the County Board.

6. The length of the school term shall be fixed by the County Board in accordance with Law

7. This continuing contract of employment shall remain in full force and effect from year to year, subject to all the provisions herein set forth, unless modified by mutual consent, in writing, of the Parties hereto, except that members of the instructional and administrative or supervisory personnel may be suspended or removed for cause as provided in Section 231.36 (1) and Section 230.23 (5) (h), Florida Statutes. This contract may be terminated at any time by the written resignation of the Employee submitted not later than four weeks before the close of school, to take effect at the end of any school year, or by the mutual consent of the Parties hereto.

8. The power of the County Board to suspend or dismiss the Employee for cause, as provided by Law, is in no manner impaired or affected by this contract.

9. This contract shall not operate to prevent discontinuance of a position as provided by law (Sections 230.23(5) and 231.36, Florida Statutes.

10. Failure of the Employee to fulfill this contract, or to carry out the lawful provisions thereof, unless prevented from so doing by reason of personal illness or other just cause, or unless released from the contract by the County Board, shall constitute sufficient grounds for the termination of the contract on the part of the County Board

11. The marriage of the Employee shall not be considered failure to fulfill this contract, or to be a violation thereof.

12. The annual salary of the Employee shall be payable monthly in either ten or twelve monthly installments, as may be determined by the County Board, in accordance with Law, and rules and regulations adopted pursuant thereto. The last month's salary shall not be paid to the Employee until the Employee shall have made all reports and performed all duties lawfully required of the Employee.

13. This contract shall at all times be subject to any and all Laws now existing, or that may hereafter be lawfully enacted, relating to the employment, fixing of salaries of teachers, the increase or decrease of such salaries, and the length of the school term.

14. The Employee shall receive from year to year all benefits relating to increase of teachers' salaries and of sick leaves and vacations, or other leaves of absence, granted by the County Board, in accordance with the lawful salary schedule of the County Board, the Law, and regulations adopted pursuant thereto.

15. This contract shall terminate if, at the beginning of any school term, the Employee does not hold a valid regular teacher's certificate as defined in State Board Regulations and which will continue in force and effect throughout the school term, provided, however, that if at the end of the preceding school term the Employee shall have been the holder of a certificate then in force and effect, but which shall have thereafter expired, and if such certificate be eligible for renewal, and if renewal thereof shall have been prevented by personal illness of the Employee, or by other just cause beyond the control of the Employee, then in either event the Employee shall have one year from and after the time of the expiration of such certificate in which to obtain a renewal certificate or a new certificate, and the operation of this contract shall be suspended for such period of one year

16. The operation of this contract shall be suspended for such period or periods of time as the Employee may be unable, by reason of illness, in addition to the sick leave granted by Law, and rules and regulations adopted pursuant thereto, to perform the duties herein required of the Employee.

17. The Parties hereto may by mutual consent, in writing, suspend the operation of this contract for a period or periods of time not exceeding one year at any one time.

IN WITNESS WHEREOF, the County Board has caused its corporate name to be signed hereto by its _____ Chairman and attested by its Secretary and its corporate seal hereto affixed, pursuant to directions contained in a resolution of the County Board, and the Employee has executed this contract, the day and year above written.

BOARD OF PUBLIC INSTRUCTION OF Palm Beach COUNTY, FLORIDA

BY _____ (SEAL)
Its Chairman

ATTEST _____
Its Secretary
THE COUNTY BOARD

_____ (SEAL)
THE EMPLOYEE

**73-2273**

souri, 361 U.S. 363, 80 S.Ct. 391, 4 L. Ed.2d 373 (1960). To be cognizable in a federal court a suit "must be definite and concrete, touching the legal relationships of parties having adverse legal interests. . . . It must be a real and substantial controversy admitting of specific relief to a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." Aetna Life Ins. Co. v. Haworth, 300 U.S. 227, 57 S.Ct. 461, 81 L.Ed. 617 (1937). Mootness is a jurisdictional question because federal courts are not empowered to decide moot questions or abstract propositions. United States v. Alaska S. S. Company, 253 U.S. 113, 40 S.Ct. 448, 64 L.Ed. 808 (1920). The federal courts impotence to review moot cases derives from the requirement of Article III of the Constitution under which the exercise of judicial power depends upon the existence of a case or controversy. Liner v. Jafco, Inc., 375 U.S. 301, 84 S.Ct. 391, 11 L.Ed.2d 347 (1964); Powell v. McCormack, 395 U.S. 486, 89 S.Ct. 1944, 23 L.Ed.2d 491 (1969). See, North Carolina v. Rice, 404 U.S. 244, 92 S.Ct. 402, 30 L.Ed.2d 413 (1971).

The recent Supreme Court case of DeFunis v. Odegaard, 416 U.S. 312, 94 S.Ct. 1704, 40 L.Ed.2d 164 (1974), outlines an excellent analysis to be employed in deciding whether an individual case is moot. First, we find that the federal courts are without power to decide questions that cannot affect the rights of the litigants before them. This inability of the federal judiciary to review moot cases derives from Article III of the Constitution under which the exercise of judicial power depends upon the existence of a case or controversy. It is clear from the facts before us, as it was clear to the Supreme Court in DeFunis, supra, that the plaintiff herein has now been satisfied as to her request for a job complete with supplemental work and pay. The counsel for the school board, as did the counsel for the State of Washington in DeFunis, has assured this court that the school board always had, and still main-

tains, good will toward Mrs Locke. Furthermore, it is clear that the school board has done everything within its power to comply with Mrs. Locke's wishes within the limitations placed upon the board by the various federal orders and mandates. This court is aware, as was the Supreme Court in DeFunis, that "voluntary cessation of allegedly illegal conduct does not deprive the tribunal of power to hear and determine the cases, i. e., does not make the case moot." See, DeFunis, 416 U.S. at 318, 94 S.Ct. at 1706, 40 L.Ed.2d at 169 (1974). But, the mootness in this case, as it was in DeFunis, depends not at all upon a voluntary cessation of activity, but rather depends on the simple fact that Mrs. Locke's wishes have been complied with and it is a matter of record that the school board is complying with the various federal mandates and orders as to integration of its school system. Even though, as in DeFunis, it could be argued that this is a question that is capable of repetition, here, more so than in DeFunis, that is not possible. The maternity leave policy allegedly forced on Mrs. Locke is no longer in existence, a new one having taken its place on December 12, 1972. Mrs. Locke will never again be forced to comply with that leave policy.

At oral argument, when counsel for Mrs. Locke was asked what remedy she desired, counsel stated that possibly she should receive money damages to compensate her for having to move from her old home to her new home in Pahokee. It should be noted that Mrs. Locke moved to Pahokee of her own volition, after having requested that she be given an assignment there. The transfer by the school board had nothing to do with the controversies in this case and therefore no damages would be forthcoming because of such a move. Mrs. Locke was under a continuing contract with the school, that contract stating that she could be transferred to any school within reasonable distance of her home, which was done immediately after her return from maternity leave. Further-

more, she was offered a job supplement, which she turned down, and this court would be hard put to enunciate a sound reason why the school board should be forced to pay damages to a teacher that it transferred in order to comply with federal orders and mandates and, further, which transfer was authorized, consented to and requested by that teacher in not only her contract but the other actions that she took voluntarily while such a teacher.

For the reasons set out above, this case is moot and appellant Locke's individual appeal should.be dismissed.

### III.   THE CLASS ACTION

In the original complaint, Mrs. Locke declared that she was bringing a class action under Federal Rule 23(b). This court finds that no such action could have been properly brought because the prerequisites for bringing a class action were not met.

An action may be maintained under Rule 23(b) only if the prerequisites of 23(a) are satisfied. These prerequisites are "One or more members of a class may sue or be sued as representative parties of all only if (1) the class is so numerous that joinder of all members if impractical, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class." Rule 23(b)(2) states that in addition to the prerequisites of subdivision (a), "The party opposing the class has acted or refused to act on grounds generally. applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; . . . ."

In considering this appeal then it must be determined whether in fact this action is properly brought as such a class action under the above rules. The district court did not determine whether the action should have been maintained as a class action and enter the order required by Rule 23(c) of the Federal Rules of Civil Procedure. Therefore, for the purpose of jurisdiction, procedural and substantive due process, and to determine the binding effect of any judgment in this matter, it must be decided if this is a proper class action. There is some question as to the correct appellate procedure to be followed when there has not previously been made a determination of whether an action is maintainable as a class action. However, the importance of the notice requirement of Rule 23 and the effect a judgment will have on an absent member of the so-called class makes it imperative that the propriety of maintaining a class action be examined. If this issue has not been considered before the action comes to a reviewing court, it would appear the better practice for the reasons of judicial economy for the appellate court to make such a determination on the basis of the record before it rather than remanding for a decision on this question. Caldwell v. Craighead (6th Cir. 1970), 432 F.2d 213.

Appellant's complaint states that it meets the prerequisites for maintaining a class action contained in Rule 23(b)(2) of the Federal Rules of Civil Procedure. The class of individuals it purports to represent in this litigation is all women employed in the school system and subject to defendants' acts violating the constitutional rights of the equal protection, due process and statutory provisions prohibiting discrimination on the basis of sex, and in behalf of all employees in the school system whose rights or under mandate of *Singleton's* case are abridged.

To decide whether this action is maintainable as a class action the character of the interests sought to be protected by the named parties in this action must be examined and compared with those interests allegedly held in common by the group of individuals the named parties seek to represent. The gravamen of appellant Locke's cause of action is deni-

al of Fourteenth Amendment rights to due process, equal protection and violation of the statutory prohibitions against discrimination on the basis of sex and race. There can be no doubt from reading the complaint and studying the facts surrounding this litigation that the actions taken by the school board were taken in part due to appellant Locke's sex and race. Mere allegations, however, of racial and sexual discrimination allegedly amounting to a violation of plaintiff's constitutional statutory rights which are without a basis in objective fact do not make that a case for relief on these grounds as to a class. Plaintiff Locke's complaint correctly alleges that she was transferred because of her sex and race. She has not, however, made out a case for violation of her constitutional and statutory rights and, furthermore, it should be noted she is no longer being "forced" to teach in a location or to teach a subject which she finds disagreeable. Having had these facts presented, it must be considered whether the conduct of one of the litigants subsequent to the initiation of this lawsuit moots this cause as to the alleged class.

■ The test of whether this class action controversy is moot involves several considerations. The absence or presence of any single factor is not necessarily determinative of whether a jurisdictional controversy exists. In United States v. Alaska S. S. Company, supra, it is stated that a case becomes moot when by an action of the parties, or a subsequent law, the existing controversy has come to an end, and the court is not empowered "to declare for the government of future cases, principles or rules of law which cannot affect the results as to the thing in issue in the case before it." In United Public Workers of America v. Mitchell, 330 U.S. 75, 67 S.Ct. 556, 91 L.Ed. 754 (1947), the constitutionality of the Hatch Act passed by Congress was drawn into question. On the question of mootness, the Court observed that "the power of courts . . . to pass upon the constitution-

ality of Acts of Congress arises only *when the interest of the litigants require the use of this judicial authority for their protection against actual interference.*" [Emphasis supplied]. Finally, it is stated that a controversy is moot when a court cannot render an effective decree responsible to the complaint, Singleton v. Board of Commissioners of State Institutions (5th Cir. 1966), 356 F.2d 771, because there is "no longer a subject matter on which the judgment . . . (can) operate." St. Pierre v. United States, 319 U.S. 41, 63 S.Ct. 910, 87 L.Ed. 1199 (1943).

For all intents and purposes the controversy between Eunice Locke, the alleged class she represents, and Palm Beach County Board of Instruction has ended. (See, II Mootness, above). Mrs. Locke and her entire family, husband included, have moved to another location, she is teaching a subject and receiving a salary which is satisfactory to her and which was given to her at her own request, and it would serve no purpose to order Mrs. Locke reinstated to her prior position even if this court were to find that it was right for such to be done. While a declaration of her rights might be undertaken, this would merely be a hypothetical ruling as between these parties. Furthermore, the maternity leave policy which allegedly violates the rights of the alleged class no longer exists. In addition, although this matter has generated public concern, the nature of the case itself we find is that of a single individual alleging infringement on her rights. This does not make the dispute one of "general public interest" requiring a decision even if many attributes of mootness exist. See, United States v. W. T. Grant, 345 U.S. 629, 73 S.Ct. 894, 97 L.Ed. 1303 (1953). It is concluded, therefore, that appellant Locke's claim raised in this action has been mooted as to her individually and as to any class she allegedly represents.

The judgment below is vacated and the case is remanded to the District Court with instructions to dismiss it as moot.